Good morning, Your Honors. I'm Esther Sorkin from Ballin, York, for Plaintiff and Appellant Carmen Peralta. And the first thing that I need to emphasize about this case is that there's no issue about the employer's right to cancel the long-term disability policy. What this is about is the failure to disclose a cancellation to the employees until several months after the event, and until after my client was injured too badly and couldn't get coverage. And the reason why it's so important to recognize that this action arose out of a post-cancellation event is that it's not preemptive by ERISA. Did you originally file in state court and were removed, or did you file straight in district court? What had happened, Your Honor, is that this case was actually filed in state court, and then I discovered the Rucker case, which is the Northern District Court opinion saying it's ERISA and you're entitled to substantive relief under the Blau case, that that is your remedy. Then when we got – and so we refiled it in – So you dismissed your state case, filed in district court. Filed it – correct. And if we were to agree with you – and this is hypothetical – but if we were to agree with you that the state law cause of action is not preempted and you then went back to state court and refiled, how are you on the statute of limitations? We believe that equitable tolling would apply because it's the same cause of action. Okay. That's all. Obviously, that would be a state law question and not for us, but okay. But yes, under the Providence Health Plan v. McDowell case, which is from 2004 – I think it happened a month before my reply brief went in – it said you have the reference necessary for preemption when it's premised on the existence of an ERISA plan, and the existence of the plan is essential to the claim's survival. And when you're talking about the nondisclosure of a cancellation, then the critical issue is not the existence, and it's not even the nonexistence. It's the nondisclosure. I think the district court cases that both sides were originally relying on – Rucker for us, Samson v. Rubin for Hispanic business – the actions were originally filed under ERISA, and the issues were things like what remedies did he ask for and what remedies could he get. Neither of them discussed when claims are preempted by ERISA as opposed to being brought under the state court. Now, the two cases that I raised in my supplemental citation letter that I filed the 25th, do Your Honors have that? I think I do, but I don't have it here in front of me. All right. I had cited two cases both from the Middle District of Alabama. One is the York v. Ramsey Youth Services, which was actually filed March 29th, 2004, and it's at 313 F. Seff 2nd, 1275, and the Jones v. LMR International, which is 351 F. Seff 2nd, 1308, and that one wasn't issued until after the briefing was complete in January of 2005. They found preemptions in cases where the wrongdoing was in letting the policy lapse, or not forwarding the payments to the insurer. It wasn't in a situation where the wrongdoing didn't even arise until the policy was gone and when the wrongdoing arose out of a duty independent of the plan's existence and of ERISA. Let me understand, although obviously we don't have the state law cause of action in front of us, which I think that's right, but to the extent of preemption, under state law, what's your argument as to what should have happened? When should your client have been alerted that we either have canceled or are about to cancel? I mean, what's the state law duty, in your view, require? The state law duty would give a, as soon as they knew that the information that they had originally given, namely that there is a disability plan, as soon as they knew that that wasn't accurate, they were under a duty to disclose, which means as soon as they ordered the cancellation. And that would have given about my client, I think about one or two months before her accident, to secure alternative coverage. And where does that duty come from in state law? The, I think I cited the restatement. The duty to correct, if I give you information and I have superior knowledge, would I have a, I have a duty to correct when I learn that the information I've given you is true, especially when I have superior knowledge. I cited the Cock case. You're assuming they gave her knowledge that there was a plan, she relies on it to her detriment by not getting another plan. And so some state court theory of you've got to make this right. And the problem here is that they claim that they made a mistake, that they didn't know the plan was canceled. So what do you do with, so is this trial going to be about whether it was a mistake or just a deception? Is that what it would be about? Well, I think it certainly, yes, I think it's likely to be that. They, however, did send the letter deliberately canceling the policy. So I don't think you're going to get a mistake. As a matter of fact, the Court said that this is a district court, and it said in the reporter's transcript, which is at pages 292 through 296, the district court was saying, this is common law fraud. This shouldn't be preempted. And at the time, the law that we had, which was primarily Rucker, indicated it was preempted. Rucker, the district court case. But the district court decided, you know, it decided that, obviously, that it didn't dismiss the case for lack of federal jurisdiction. It assumed it had jurisdiction and that it was preempted. Right? Isn't that what happened? Well, it was correct, because, Your Honor, based on what we had at the time, when the Court said this sounds to me like it shouldn't be preempted, what we had before us were the cases such as Rucker that said there's a duty to give prompt notice. Your remedy is what they merely described as substantive relief under Blau, under the Rucker case. And it was preempted. Okay. Was the Providence Health Plan McDowell case after the district court decided this case? Yes. So that's why it wasn't discussed. Okay. It wasn't discussed then. And the most accurate, the most on-point case that we had at the time was Rucker. Okay. And then when the court, the district court had to deal with the fact that it looked like it wasn't, that it was a preemption, it then went to hold that because the plan no of law there is no equitable relief that we can grant. Let me ask you this. If there were preemption, and if somehow this, if this case were distinguishable from McDowell and there were preemption, then is there any remedy? There is no plan. I believe there would be, Your Honor. And what gave me the idea was a combination of the two middle district, the two Alabama cases that I cited, and the Ninth Circuit Matthews case. Because what the Alabama cases both held is that when the policy lapsed, they were looking at it in a different context of whether or not it was preempted by ERISA. And what they said is, look, the relief that you're seeking from the employer who let the policy lapse, who didn't forward the payments, is akin to the benefits due under the policy. And then in the Matthews decision, this court said, look, an order reinstating people into the plan is not an order directing the payment of monetary damages in good part because reinstatement only would not necessarily automatically entitle the plaintiff's benefits. They would only be automatically entitled in this case because there had been a stipulation by the parties. Is there a plan to reinstate them into? Currently, there is. She can't get reinstated into her old plan. I don't know if there is a new plan or not where she could get reinstated. Or similarly, a court could also fashion an order directing Hispanic business to stand in the shoes of the insurer and process a claim. That sure sounds like money judgment. Well, I don't think it would any more than the Matthews thing said it was a money judgment. First of all, on its face, it's not a money judgment. And secondly, defense counsel are very good attorneys, and I'm sure they can come up with something, you know, in terms of if they are just processing the claim, that's not an automatic entitlement to money. You know, they could still find some way, I suppose. But the argument for the moment would be that the defendant simply acts as an insurance company. Yes. But they are just standing in the shoes for the purposes of this case if you want to say it's preempted by ERISA. I'm just suggesting that as another potential remedy. Like I said, in Rucker, it just said substantive relief, which is. Now, if we were to agree with you that this is not preempted and goes back to state court, or if we were to agree with you that some remedy is available, I guess your client would have to show that she would have, in fact, had she been timely notified, purchased some form of disability insurance. If the action would proceed in state court, yes, I think that's what she would have had to show. If the action is proceeding under ERISA, that would depend on whatever order ended up getting crafted. In other words, if you're going to say you're just going to stand in the shoes of the insurance company, process it under the, you know, as that policy directed a claim to be processed and subject to the claims and defenses available, then no, she would not. But the premise for standing in the shoes of the insurance company, I think, has to be tied to, well, she would have purchased the insurance had she been timely informed, right? No, Your Honor, because what I'm suggesting is that the insurance company that they're standing in the shoes of is the original policy that they had issued and canceled. But you start out from the premise that they had every right to cancel that insurance, which they did. Correct. And their sin, to the extent that there might have been a sin, was not to inform her that they had done so. Correct. And thereby depriving her of the opportunity to purchase her own insurance. Yes. There would still be that issue. Yeah, yeah. Okay. Okay, and I'd like to save the rest of my time for rebuttal. All right. Fine. Good morning, Your Honors. May it please the Court. My name is Steven Ronk, and I represent Apelli Hispanic Business, Inc. in this case. A lot of plaintiffs, I'm sorry, the appellate's briefing and argument is focused on this issue of preemption, on this issue of whether or not ERISA applies. We don't believe for a second that that's actually a genuine issue. I think ERISA clearly applies to this case. A long-term disability policy offered gratis by an employer to its employees is a classic example of an employee welfare benefit plan. But, of course, she's not suing under that insurance policy because it's gone. Well, the requested relief is what she would have gotten under the policy, and the requested — Well, not if she goes into state court. Well, the requested relief if she goes into state court is that she might have bought, assuming she can prove it, she might have bought a replacement policy, and whatever damage she gets, well, she can show that. I understand that contention, Your Honor. And I'd like to point out, to clarify one issue, that this was not a compulsory move to Federal court. This was voluntary. No, we heard that, and that's correct. Page 1 of Appellant's own excerpt of the record is her complaint. Paragraph 1 of the complaint says that this case is being filed and brought under the Employee Retirement Income Security Act of 1974. It's an ERISA complaint. It was always an ERISA case until judgment was entered into our favor. Now it's not an ERISA case. Now it's a state court case. But the judgment was entered prior to our decision in McDowell? I don't have the date of the McDowell decision, Your Honor. McDowell is March 24, 2004. It was entered. Actually, the date of the order is October 8, 2003. Yeah. I still don't believe that case applies. I think this is clearly – this is not a case where there wasn't a plan. There was a plan in effect. The complaint – Well, there was a plan in McDowell, too. This plan, however, she's proceeding under a violation of the duty to give notification, which is part of the ERISA statute. And this case, we believe, is distinguishable. This case is more like – Well, there is an obligation under ERISA to give notification of changes. Does this fall within that duty? There is under Section 1024b1b, which is where an income replacement benefit plan falls. It's not part of a group health plan. There is a requirement to give notification of modification or changes to the plan. Right. And we believe that would also certainly include a cancellation of the plan. That requirement gives us – I'm sorry. No, it's just that some courts think that it doesn't cover total terminations. It only covers modifications. You can understand the thinking there is if it's a modification, you're still seeking benefits under the plan. If it's a termination, the plan's gone. So – Even if we look to the same section, 1024b1, where it discusses group health plans, it discusses a duty to give notification of material reduction in benefits. And, again, I think it falls within the same rubric that that statutory section – Is that the same section? 1024? 1024b1 discusses group health plans and uses the language material reduction in benefits or material changes. For group health plans. Right. 1024b1b is what we contend applies to a long-term disability policy. So I think it's fairly clear – we believe it's fairly clear that ERISA does apply. They've sued under ERISA. They simply don't like the result. Okay. I think preemption is in effect here, and I think this case should be – John, do you think that you're putting remedy to one side? Do you think your client violated ERISA in failing to give notice? No. Our contention is we gave notice within a timely fashion. The notice was given on October 18, 2003, 123 days after the cancellation. The law requires us to give notice within 210 days after a planning year. But that's assuming that comes under the modification provision, even though it doesn't say elimination. Yes. Correct? Your Honor, we are arguing that that is what applies to this. You're arguing that elimination is a modification within the meaning of that statute. Even if there's an issue as to whether or not the 210-day period doesn't apply, giving notice within three months of the cancellation, it would be our contention, is not unreasonable. What follows if you're wrong and it's determined that this is an ERISA case and that you failed in your duty to give the kind of notification that was required? Then plaintiff would have established a procedural violation of ERISA. And we then move on to the analysis of what remedies are available for procedural violations of ERISA. That's what this case would be if, in fact, we didn't comply with the notice requirement. The law is very clear. Great West Annuity controls this area. It's a Supreme Court decision that says monetary relief, compensatory relief, is prohibited under ERISA. This Court, very recently in 2004, restated that in the Matthews v. Chevron case and went to great lengths to demonstrate how the relief granted in that case was, in fact, injunctive in nature and equitable in nature and not money damages. What happens if the modification 210-day provision does not apply? That is to say you have no duty under that because this is a cancellation rather than a modification and that you had no duty under ERISA to notify within 210 days or ever? Well, then plaintiff wouldn't have a claim either in Federal court or State court, I would argue. Well, I understand the first part, no claim in Federal court. But if ERISA doesn't cover it, why is there no claim in State court? Because it's preempted, right? Circular. It's preempted because? Is it an implicit sort of preemption? Even though there's no duty under ERISA, the States are forbidden to set up a duty when the ERISA plan disappears? ERISA doesn't speak to whether or not there's a violation. It doesn't. It doesn't do the preemption analysis or we don't do the preemption analysis by starting with whether or not we have a violation of ERISA and then going backwards. ERISA occupies the field. The Federal government occupies the field. Well, if it occupies the field, I think we made a mistake in McDowell. Well, Your Honor, our contention is in this case, I think it's fairly clear that ERISA does preempt. And I also believe that this. Now, can you address that? Assuming McDowell is good law, and for the moment it is, in that McDowell case, it was in the plan that there was a right to recover part of that third-party recovery. Nonetheless, we held that that wasn't covered by ERISA and was instead covered under State law. Now, if that's true, that potentially goes pretty far if we start from the premise that there is no duty under ERISA to notify upon the cancellation of a plan. And there's nothing in the plan. There's nothing in ERISA that requires it. You're still saying it's preempted despite the reasoning of McDowell? Yes, Your Honor. Our argument is that the 210-day notice requirement does apply to us. Our argument is there are – their claim is that we failed to timely notice based on the Rucker case or some other analysis where in the case of – where there's That's the analysis. Okay. Assume you lose on that one, and we find that the modification provision doesn't cover this. Assume that. I suppose that's the situation. Then have you got ERISA preemption? Yes. Because? Because this was part of an employee welfare benefit plan. Which no longer – which got canceled. No longer exists. I'm sorry. Only one portion of the plan got canceled. It's not a cancellation of the overall plan. It was a cancellation of one particular benefit, specifically this long-term disability policy. And what relief is being sought is, in essence, reinstatement of this policy. In essence, we want to be made – put into the position that we would have been had the plan not been canceled. That's the specific relief. Is there a policy to reinstate her in? No. There is no policy. And there was none at the time of her action. Well, you know, you may be right about all this. But, you know, it leaves the courts in rather an odd position to say, there is no plan. She can't be reinstated in anything. There is no provision that gives her a remedy. And she can't go to state court. That might fly in other places. It seems like it's going to be kind of hard to carry off in the Ninth Circuit. Well, what's before us here? Considering a whole line of cases ending with Meddow, which probably goes the furthest, in finding no ERISA coverage. Your Honor, I don't believe that the issue of preemption has properly been raised before this Court, for one. I mean, this was an ERISA case that resulted in a summary judgment. There was an appeal taken from summary judgment. The summary judgment was based upon an application of ERISA. There has, this issue has been raised only after that judgment was taken. And there's been no, they certainly, if that's the argument, had the power to dismiss their case at any time. Well, except that we can't let a case stay in district court if there's no subject matter jurisdiction. And there's no diversity jurisdiction unless it's ERISA, in which case there's preemption. So since we can talk about subject matter jurisdiction at any time, we can talk about preemption at any time. I think that's the way it works. Is part of your argument that the Meddow case should be further briefed? I would request the opportunity to do that if the Court is inclined to address the issue of preemption within that context. Given that we have, rightly or wrongly, said that the existence of ERISA preemption is a subject matter jurisdiction question, is it fatal to our consideration that it was not raised in the district court? Or rather, are we obliged to raise it because it's subject matter jurisdiction? Well, Your Honor, I can't answer the question of whether or not it's fatal to the analysis. I simply haven't done that analysis. I would request to do that. I'm not asking you to concede on Meddow. I'm just on the question as to whether or not subject matter jurisdiction is something that we're obliged to look at, irrespective of what was argued in the district court. Your Honor, I would contend, we contend that the complaint frames the issues in this case. I mean, we got notice of an ERISA case. That's the case we litigated. That's the summary judgment we brought. That's the judgment that was granted for us. Now, on appeal, this issue is raised anew. However, I don't believe it's raised in a timely fashion. And we contend that this shouldn't be something that comes up solely on appeal. Well, I thought actually the issue of preemption did come up at the time of summary judgment. Didn't the district court mention it at the time? I don't recall that, Your Honor. It may be in the order, but I don't know. Yeah. You know, I don't know what to do about a complaint that starts off with this is under ERISA. Maybe we just call that a label. And then you go through it and see what she actually claims. Paragraph 1. I know. Cites this statute. She says. But maybe we say, well, she wants to come up under ERISA, but the truth is we have no subject matter jurisdiction. Gone. And we have no subject matter jurisdiction because it's not preempted, because the State law cause of action is not preempted. And then the end result, I guess, is this case would then disappear, the judgment disappears, and the appellant is then stuck with fighting the fight of the statute of limitations, which is now. In State court under State law. That might be an outcome. Then that's obviously not a question for us. If she's in State court arguing State law statute of limitations questions. Yes, Your Honor. Yeah. Now, you've obviously read the McDowell case. And I assume you're prepared to talk about it. Is this right? Well, Your Honor, I had been prepared mainly to address the points of what's raised as far as whether or not there's a right to substantive relief. I have read the McDowell case. You say you have read it or not? I have. It's been a while. I would request the opportunity to do supplemental briefing if this is going to be the central issue raised at this time. But you actually did address this in your brief. I mean, she said there was no jurisdiction. And you responded by distinguishing the Scott case. So you already addressed it. Yes, we stand by that, Your Honor. Okay. The second point I wanted to make, and just briefly, is there's a lot of discussion about whether or not there was active or intentional concealment. For them to get, for the appellant to get substantive relief, they have to demonstrate in the words of Blau, egregious conduct. In the words of Matthews, a recent case from this Court, active misinformation. In the words of Rucker, I believe it was intentional concealment. None of those issues are present here. The evidence, the state of the record is there was an email exchange between the CEO of the company and the chief financial officer as to what is this, is anybody using it, why do we continue to pay it. It got canceled without the involvement of the HR manager. And when she discovered it three months later, she sent an email company-wide letting everybody know that the LTD policy had been canceled. Unfortunately, because of the timing of Ms. Peralta's accident, which was not an on-the-job event, unrelated to her employment, her accident occurred beforehand. I don't believe that there is any way that this case fits into Matthews or Rucker or Blau. This is simply a case of an inadvertent failure to notify to the extent it is a violation of ERISA. It is merely a procedural violation, which takes us into Great West annuity. The law is clear that for this type of violation, if no injunctive or equitable relief is available, which is the case here, then she cannot sue for money damages. What does it mean in this email? Because of communication errors, our long-term disability policy was canceled inadvertently in July. I thought you said a decision was made deliberately to cancel it because nobody was using it. I think the decision was, the cancellation occurred, the cancellation was made by the CFO without further discussion with the CEO and the human resources manager. There was an email chain back and forth about what is this item of expense. That email goes back saying this is a long-term disability policy. There is another email from the CEO saying, is anybody using this? At some point in that exchange, the cancellation occurred. Who canceled? I believe it was the CFO. Then the human resources manager says it was inadvertent. We are currently having our broker obtain bids from new carriers for our open enrollment period, effective December 1. At that time, this policy will be reinstated. It seems that the human resources manager says we're going to reinstate this policy. I'm sure there's no evidence that that was not the case and not the fact at the time, Your Honor. It ultimately did not reinstate it. Ultimately it was not reinstated. And that email was the actual notification. So that email cannot in itself be an act of concealment and at the same time a notification of the cancellation. That was the email that let the employees know that the policy had been canceled in July. The nature and the reason for the cancellation, there's a fair amount of waffling in some of the depositions. I don't understand the term circumstantial as it seems to have been used repeatedly. So there's a little bit of ambiguity, the circumstances under which the circumstantial cancellation took place. I believe what Mr. Chavarria was referring to was the email exchange back and forth without there being some final definitive decision, cancel the policy, this is your directive. It simply got canceled. It was something that Mr. Petta, I believe who was the CFO at the time, decided that he needed to do or was supposed to do. That's as I understood Mr. Chavarria's argument. And then he didn't tell human resources so they could notify the employees. Apparently not. Do we have case law on the question as to whether or not a cancellation of an ERISA policy comes within the 210-day duty that's textually directed to modifications? The only case law that addresses it is Rucker. And Rucker said it does not. Rucker says it's prompt notification. And if that is the law, then we may have committed a violation in waiting three months. But, again, it's a procedural violation of notification. It's not at this point. And Rucker, let me, I just read Rucker this morning. I'm embarrassed. My short-term memory is turning out to be very short. And Rucker was a cancellation, was a termination? Yeah. It was actually a long-term disability policy. That person didn't have an accident. He suffered from a disability. So we kind of have, don't we have boring district courts on this? Rucker one way and Sampson the other? Sampson is? I'm not exactly sure if there's a specific split on that exact issue. I know there is a discussion in a number of cases among whether or not the modification applies to a cancellation. With that, Your Honors, I see that my time is short. I'd just like to conclude by stating that we do certainly believe that ERISA governs this dispute. And, at best, they have a procedural violation. And Great West Annuity applies. And there simply is no remedy available under ERISA to appellant. Thank you. Thank you. Ms. Starkin, Rebecca? Thank you, Your Honor. First of all, Your Honor, at tab number 38 in the appellant's excerpts of records at page 207 is the copy of the letter dated July 3rd, 2000. Effective today, July 3rd, 2000. We would like to cancel our policy for long-term disability insurance. And it is signed, best regards, Maureen Gerard, Human Resources Manager. And then in October 18th, you have a new Human Resources Manager, June Wozniak, who is giving notice saying because of some communication errors, our long-term disability policy was canceled inadvertently. The long-term disability policy, that's part of a larger package, isn't it? Well, there were other benefits, I think. Right. It's part of a large package. The whole thing wasn't canceled. Part of it was. I don't know if it was a – I think the long-term disability was a separate policy that was part of the package. It was part of the package. But what I mean is – The ERISA package had lots of cafeteria options in it, various things that it did. So part of it was canceled. The whole thing wasn't canceled. Well, the only thing that was canceled is the only thing that's relevant to the case, but yes. Yeah, but that might reflect on modification or changes. It depends on what you're looking at. Well, so far there was a case called – They modified the whole package by taking out the disability insurance part. I would think that would qualify as a cancellation of coverage, at least under the analysis of Rucker, where they say we won't treat a termination of coverage as a modification because it's too important. You need to get it replaced. Whether or not – Are you agreeing then with Rucker that there's an ERISA duty for prompt notification for this form of either – what we call a cancellation or modification? I am suggesting it exists under both common law. And if this is preempted under ERISA, then there is a duty of prompt notification. Rucker does discuss another case called Keitel, K-Y-T-L-E. I don't have the citation for that right offhand. That's the only case that says that the 200-day limit would be applicable. Let me see if I can work this through. If we consider this a separate plan, then it's entirely canceled. If we accept it as a part of an ERISA plan, that plan includes health plans, right? And so then does the provision on material reductions apply? No. I think it would still apply because it's a totally separate form of coverage. And the analysis under Rucker and under Ackerman, the third district case which I cited, and under Coloroso. What's the rule on material reductions? That I don't know because what they've all held, all the cases have held, is that since the focus is on being – giving – you need to give prompt notice so that you can replace the missing coverage. So to me, that indicates if it's a separate and distinct form of coverage that I would get under a separate and distinct form of policy, then it's a termination. Then you have prompt notice. Okay. And – But if that's the argument, then you're stuck with your ERISA remedy. You're right. Well, I'm – there are two duties. There's a duty under common law to correct the error. And then there's – and ERISA also has a duty. Now – But if there is an ERISA duty for prompt notification, that makes your no preemption argument much harder. It is an alternative argument that it's either not preempted or it's preempted and there's a remedy. If it's preempted, I mean, you're out on your common law argument. It's preempted. Well, yes. If it's preempted, then I'm out on common law. But there's a common law duty. There's an ERISA duty to give prompt notice. But under McDowell, which was several years after Rucker, where the focus is on the existence of the policy, then I'm saying maybe it is all common law now and Rucker has been knocked out by McDowell. The other point that I wanted to make – She understands it. – is that in many of the cases that discuss Rucker, Rucker itself said that many of the things that happened here, like failing to follow their own notification policies, gave rise to a triable issue of fact as to whether or not it was egregious enough to get substantive relief under Blau. So under Rucker – I don't mean this as criticism, but you seem to be all over the lot. Okay. And you've got to tell us where you're going. My argument – Where are you going? I mean, is it preempted or is it not preempted? I don't think it's preempted. Okay. So your position now is it's not preempted. I think the correct law after McDowell is that it is not preempted. Now, you could be arguing the following, that there is both an ERISA duty and there is a non-preemptive state law duty. Is that your argument? It is correct, yes. But if there is an ERISA duty, the argument in favor of preemption gets a lot stronger. Provided there is a remedy, yes. And the problem that I'm – Where are you getting this, that preemption depends on whether there's a remedy? That seems to be what you just said. Well, all the cases supporting preemption talk about how ERISA gives you a remedy. Okay. But, of course, there's plenty of cases where it's preempted and there is no remedy. Well, I'm talking about cases strictly involving the cancellation. Oh, okay. Okay. All right. Where they say this is horrible in – in Rucker, for example, they said you're entitled to substantive relief – they said there's a triable issue of fact as to whether you're entitled to substantive relief under Blau, because things like failing to follow your own procedures and giving conflicting information about the reasons for the cancellation support an inference that this is sufficiently egregious to get substantive relief. There's a case I cited called Colorazzo, where they said, yes, there was a duty to give prompt notice. We define prompt notice as 30 days. You are entitled to the statutory remedy for failing to give notice of $100 a day or up to $100 a day as a statutory remedy for the failure to notify of a planned cancellation. So all the cases that say it's preempted say there's a remedy. And then along came McDowell and said it's got to exist. Okay. Thank you very much. Both sides. Complicated case because a complicated statute. If we want further briefing on McDowell, we'll do that in a separate order. So until you hear from us, no additional briefing on McDowell. The case of Peralta v. Hispanic Business, Inc., now submitted. Thank you very much.
judges: Trott, W. Fletcher, Restani